[Crim. No. 1226. Third Appellate District.—October 17, 1932.]

THE PEOPLE, Respondent, v. B. FERNANDES et al., Appellants.

Frank C. Hale and D. P. Eicke for Appellants.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

PLUMMER, J.—The defendants were convicted of simple assault and also of the crime of kidnaping one Tiofolo Papito and carrying him from the county of Merced into the county of San Joaquin. From the judgment of conviction and the court's denial of their motion for a new trial, the defendants appeal.

Upon this appeal no point is made as to the sufficiency of the testimony supporting the count charging assault, but reliance is based upon an alleged defect in the fifth count of the information filed against the defendants, charging the crime of kidnaping, in that it does not charge that the defendants intended or had any design to take the said Tiofolo Papito out of the state of California.

So far as material here the count charging kidnaping is in the following words: "The said B. Fernandes, P. Dorian, C. Rondez and F. Rondez on or about the 8th day of May, nineteen hundred and thirty-two, at and in the said county of Merced, and State of California, and prior to the filing of this Information, did then and there unlawfully, wilfully, feloniously and forcibly, and without any lawful warrant or authority, steal, take, seize, kidnap and carry away one Tiofolo Papito, in the said County of Merced, and did then and there, from the said County of Merced, aforesaid, unlawfully, wilfully, feloniously and forcibly carry away and transport the said Tiofolo Papito into another county, to-wit, the County of San Joaquin, State of California, without having established a claim to the said Tiofolo Papito according to the laws of the United States, or the State of California."

■ In making the contention that the information is insufficient to charge the offense of kidnaping, appellants rely upon section 207 of the Penal Code, and the case of

*Ex parte Keil,* 85 Cal. 309 [24 Pac. 742]. The language of section 207, *supra,* shows clearly that the legislature intended to describe several offenses or several different acts which would constitute the offense of kidnaping, to wit: the forcible taking of a person from one county to another; also, from this state to another state, without having established authority, as provided by law. So far as applicable here the section reads: "Every person who forcibly steals, takes or arrests any person in this state and carries him into another country, state or county, or into another part of the same county, or who forcibly takes or arrests any person, with a design to take him out of this state without having established a claim according to the laws of the United States or of this state (etc.), is guilty of the crime of kidnapping." The language is plain and direct that every person who forcibly steals, takes (etc.), any person in the state and carries him into another country, state or county, or into another part of the same county, without authority so to do, is guilty of kidnaping. There does not need to be any intent or design to carry the person kidnaped out of the state. If taken from one county to another the crime is complete.

In *Ex parte Keil, supra,* the court had before it a case of kidnaping, in which it was stated that there was no evidence that the petitioner took or intended to take Bush and Kemp into any other country, state or county, and then added: "Petitioner was not guilty of kidnapping, therefore, unless he had a design to take them out of this state" (within the meaning of the section to which we have referred). In the instant case the charge is, and the proof establishes the charge, that the defendants forcibly and wilfully took the person of Tiofolo Papito from the county of Merced to the county of San Joaquin.

In the case of *People* v. *Fick,* 89 Cal. 144 [26 Pac. 759], the defendant was charged with taking a Chinese woman from San Joaquin County and conveying her to the county of Placer. Nothing appears in the opinion indicating that there was any intent or design to carry the Chinese out of the state. Conviction of kidnaping was upheld.

In *People* v. *Sheasbey,* 82 Cal. App. 459 [255 Pac. 836, 838], the court, in passing upon the question of intent or design, used the following language: "Where the intent,

state of mind or belief of the defendant is an element of the crime, he is permitted to give his direct testimony on that fact (citing a number of cases). But no state of mind or belief is a part of the crime of kidnapping, nor constitutes by itself a defense to the charge, and where no circumstances are proven which would constitute a lawful excuse, no intent is necessary except the intention of doing the acts denounced by the statute. The purpose or motive of the taking and carrying away has been held to be immaterial in prosecutions for kidnapping.'' (Citing *People* v. *Fick*, 89 Cal. 144 [26 Pac. 759]; *People* v. *Bruno*, 49 Cal. App. 372 [193 Pac. 511].)

The word ''or'' as found in section 207, *supra*, refers to alternatives, that is, to different acts which, if committed, constitute the offense, not that all of the acts must be taken together, but each particular act is sufficient; that is, the carrying, taking forcibly, feloniously, etc., of a person from one county to another, constitutes the offense. Or from one place to another, with the design to take the person out of the state.

The word ''or'' is thus defined in 46 C. J., page 1124: ''The monosyllable 'or' is a disjunctive particle that marks an alternative generally corresponding to 'either', as 'either this or that'.'' Other definitions are given, but these are sufficient. Thus, if the defendants did either, or one or the other of the specified acts denounced by the statute, the crime is complete so far as the charging of the crime in the information is concerned.

No question is presented for our consideration as to the sufficiency of the evidence to sustain the verdict of the jury. It is contended, however, that the court erred in permitting a witness to testify as to the handwriting of one of the defendants found upon a hotel register in the city of Stockton. The testimony shows that the defendants took the person of Tiofolo Papito from a place called ''Cortez'' in Merced County, to the city of Stockton, and kept him overnight at a hotel or lodging-house known as the ''Mariposa Hotel''. The name of one of the defendants, Dorian, appeared upon the ledger, showing that the defendants had been at that hotel on the 8th of May, 1932.

The testimony objected to is that given by a police officer in the city of Stockton by the name of Harbert, who

testified that he had compared the signature, admitted to be the genuine signature of the defendant Dorian, with that appearing upon the register of the Hotel Mariposa. The record shows that the witness in his official capacity had, as a part of his duties, the comparing of signatures. The witness, however, had never seen the defendant write, nor does it appear that the witness was testifying as an expert. Over the objection of the defendant this witness was allowed to testify as follows: "I would say, according to the amount of experience that I have had, that this was written by the same man." That is, that the signature admitted to be the genuine handwriting of the defendant Dorian was written by the same person who signed the hotel register.

While the foundation laid for the introduction of the testimony of this witness was not very full, and was not made as complete as it should have been, the fact is shown by the testimony that all of the defendants were at the hotel mentioned at the time in question; that they had with them the person of Tiofolo Papito, and even though it be true that the defendant Dorian stayed at another hotel called the "Palace", in the city of Stockton, the defendants suffered no prejudice whatever by reason of the admission of the testimony just referred to. The testimony shows that the person of Tiofolo Papito was beaten up by the defendants; that they all acted in concert; forced Papito, by exhibiting guns, to get into the automobile and accompany defendants to the city of Stockton.

The sufficiency of the testimony to sustain the verdict, not being challenged, save as to the question of intent or design, and the testimony showing clearly that no authority was exhibited or warrant exhibited authorizing the defendants to take the person of Tiofolo Papito out of the county of Merced and transport him to the county of San Joaquin; and the only grounds for reversal being the ones we have considered, it satisfactorily appears that the appeal is without any substantial merit, and that the conviction should be allowed to stand.

The judgment and order of the trial court are affirmed.

Thompson (R. L.), J., and Pullen, P. J., concurred.