STATE OF IOWA, appellee, v. RONALD J. WALLACE, appellant.

No. 52074.

OCTOBER 18, 1966.

David F. Setter, of Kintzinger, Kintzinger & Van Etten, of Dubuque, for appellant.

Lawrence F. Scalise, Attorney General, Don R. Bennett, Assistant Attorney General, and Robert W. Burns, of Dubuque, County Attorney, for appellee.

RAWLINGS, J.—By county attorney's information defendant was charged with the crime of kidnapping, entered a plea of not guilty, tried, found guilty by a jury and appealed.

He assigns as errors the following: (1) overruling defendant's objections to admission of evidence concerning a shotgun and shells found in an automobile; and (2) the trial court's refusal to instruct the jury on intent as an element of the offense. We find no merit in the second assignment but are satisfied the first assignment necessitates a new trial.

The record discloses Geraldine Richardson, complaining witness, attended an informal party at the Roshek residence in Dubuque. About 3 a.m., August 30, 1965, the young lady became upset because of something said and left the house.

She had walked about one mile when an automobile passed her and the occupants made some apparently unintelligible remark. The car soon returned, again went past, turned back and came to a stop a short distance away. The defendant got out of the car and asked Geraldine if she wanted a ride. He then put his arms around the girl's waist and forced her into the rear seat of the automobile which was driven away.

A short time later, or about 3:30 a.m., the subject vehicle was stopped by Officers O'Brien and Lambert of the Dubuque police department. Geraldine got out of the car which she had

been forced to enter, went to the squad car occupied by the police officers and told them what had previously occurred. Defendant contends the girl voluntarily entered and remained in the car. She was in no manner molested other than being allegedly held by her wrists in the automobile prior to the time it was stopped.

The automobile in which defendant was riding was a Chrysler which belonged to his mother, operated at the time by his brother Sidney. The other two occupants were James L. Lucy and Richard L. Dunwoody.

There was no search of the subject car at the time it was stopped. Rather, one of the officers told Sidney to drive to police headquarters, which he did. There the Chrysler was locked by one of the policemen and the four young men, being then "arrested", were placed in cells. The car keys were left with the desk sergeant. This all occurred about 4 a.m. These two officers then went off duty but returned at 8 p.m.

About 11:30 p.m. of the same day these same policemen secured the Chrysler car keys from the desk sergeant and without having secured consent from anyone, with no search warrant, proceeded to search the subject vehicle. Officer O'Brien, exploring the rear of the car, pulled the back seat forward and there found an unassembled double-barreled twelve gauge sawed-off shotgun. Officer Lambert, examining the front seat area, found two shotgun shells in the glove compartment. Using the shells which had been discovered these policemen tested the gun and found it fired.

By a motion in limine defendant challenged the propriety of any reference to, or any attempted presentation by, the State of evidence relative to finding of the gun and shells. In so doing defendant asserted these items had been obtained by an unconstitutional search and seizure, were irrelevant, and could only be referred to or placed in evidence for the purpose of prejudicing the jury against defendant. The trial court ordered that no reference be made to the gun or shells during selection of a jury or in opening statements.

Then during trial, after an in camera hearing, the court, over defendant's repeated objections, permitted officers O'Brien

and Lambert to describe in detail the search, the gun and the shells.

At close of trial defendant requested the jury be instructed as to the meaning of the word "willfully", and "intent" be included as an element of the offense charged. These requests were refused.

I. As previously stated defendant in argument challenges all evidence relative to the sawed-off shotgun and shells claiming: (1) they were obtained by an unreasonable search, and (2) irrelevant to any issue in the case.

In support of the claimed unconstitutional search and seizure defendant leans heavily on Preston v. United States, 376 U. S. 364, 84 S. Ct. 881, 11 L. Ed.2d 777, contending a search of the car some 20 hours after apprehension was unconstitutional.

The State contends Preston is not here controlling since the original arrest there made was for vagrancy, while in the case now before us the arrest was for kidnapping, and the automobile used in perpetrating the offense, having been seized or impounded, could be later inspected for incriminatory evidence.

State v. Raymond, 258 Iowa 1339, 142 N.W.2d 444, is cited in support of this view. Incidentally no search was involved in the Raymond case.

However, we are satisfied the issue now before us need not be resolved under any constitutional mandate.

II. Admittedly evidence as to weapons or other articles sufficiently identified and used, or with respect to which there is sufficient proof to justify a reasonable inference they were or may have been used in the perpetration of the offense charged, is generally admissible in evidence. State v. Drosos, 253 Iowa 1152, 114 N.W.2d 526, and 22A C. J. S., Criminal Law, section 712, page 956.

But such evidence must have probative value and be relevant to the issues involved.

In State v. Knox, 236 Iowa 499, 514, 18 N.W.2d 716, this court recognized the relevancy test. We there said:

"It hardly needs authority to sustain the proposition that

evidence presented in a case must be relevant to the issue. If not relevant it has no place in the trial. * * *

"By 'relevancy' is meant the logical relation between the proposed evidence and a fact to be established. * * *."

See also State v. McDougal, 193 Iowa 286, 296, 186 N.W. 929.

Then in State v. Slauson, 249 Iowa 755, 760, 761, 88 N.W.2d 806, this court stated as follows:

"Relevant evidence, of course, means evidence having any tendency in reason to prove any material matter and includes opinion evidence and hearsay evidence. See Model Code of Evidence, rule 1(12); Uniform Rules of Evidence 1(2). Also see article on Determination of Relevancy, by Mason Ladd, in Tulane Law Review, Volume XXXI (1956), pages 81 to 90.

"It is also true that even though the test of relevancy is met, the offered evidence is subject to the test of policy consideration. As pointed out in Dean Ladd's article referred to above, foremost among these is the danger of *undue* prejudice. Evidence having a minimum of probative quality and which is highly prejudicial must be excluded. While most all evidence against an adverse party is prejudicial in the sense that it creates a resistance to the success of one party's case, such objections as we found herein are really directed to the contention that the evidence is too remote and prejudicial to be accepted as relevant. Thus the prejudicial aspect becomes important only when the evidence has a minimum of probative quality. It follows, then, that primarily it is for the trial judge to decide, first, whether the offered evidence has some probative force, and second, to balance the value of that evidence as a contribution in the solution of the fact issue against the danger of its prejudicial or wrongful effect upon the triers of fact.

"Uniform Rule 45 summarizes the policy consideration as follows: 'Except as in these rules otherwise provided, the judge may in his discretion exclude evidence if he finds that its probative value is substantially outweighed by the risk that its admission will (a) necessitate undue consumption of time, or (b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury, or (c) * * *.' "

See also State v. Poffenbarger, 249 Iowa 480, 87 N.W.2d 441; State v. Snyder, 244 Iowa 1244, 1248, 1249, 59 N.W.2d 223; and 22A C. J. S., Criminal Law, section 600, pages 385–392.

■ And as a general rule demonstrative evidence or that related thereto is usually received *if it affords a basis for a reasonable inference on a point* in issue, provided it meets other relevant tests of admissibility. See State v. Williams, 245 Iowa 494, 505, 62 N.W.2d 742, and State v. Kehr, 133 Iowa 35, 37, 110 N.W. 149.

However, evidence which has no tendency or only a slight tendency to establish guilt or innocence of an accused, or which if effective at all could serve only to prejudice, mislead or excite the passions of a jury, should not be admitted. 22A C. J. S., Criminal Law, section 600, page 395; section 601, page 403; and section 712, page 965. See also Underhill, Criminal Evidence, Fifth Ed., section 11, page 14.

■ III. Of course error in admission of evidence must be prejudicial to an accused to constitute cause for reversal. State v. Post, 255 Iowa 573, 579, 123 N.W.2d 11, and State v. Collins, 246 Iowa 989, 995, 69 N.W.2d 31. See also State v. Martin, 243 Iowa 1323, 1334, 55 N.W.2d 258, 34 A. L. R.2d 904.

A common test to determine whether an error in admission of evidence was prejudicial is found in 5 Am. Jur.2d, Appeal and Error, section 783, page 225:

"The test is said to be whether, upon a review of the record, it sufficiently appears that the rights of the complaining party have been injuriously affected by the error, or that he has suffered a miscarriage of justice. The fact that the record as it stands may show that the evidence preponderated heavily in favor of the appellee does not foreclose consideration on the part of the reviewing court of any error or irregularity committed at the trial, and for the purpose of determining whether or not the appellant has been injured, it is proper to look to the whole record, and not to that part only which precedes and includes the particular exception under consideration."

See also State v. Barton, 258 Iowa 924, 929, 140 N.W.2d 886, 889; State v. Collins, 246 Iowa 989, 996, 69 N.W.2d 31;

and Estes v. State of Texas, 381 U. S. 532, 543, 85 S. Ct. 1628, 1633, 14 L. Ed.2d 543.

We need not here repeat the factual situation involved in the case now before us. The record clearly discloses neither the complaining witness nor the arresting officers either mentioned or inferred any threat, or attempt by defendant or anyone else to at anytime, in any manner or means, use a shotgun or any other weapon in the perpetration of the offense here charged.

There was not even a scintilla of evidence which tended to connect defendant with the gun and shells or which disclosed he knew they were in his mother's car. In fact these articles were neither remotely connected with the subject offense nor did they tend to prove or disprove any matter in issue. See State v. Potter, 243 Iowa 970, 976, 54 N.W.2d 516.

It is to us apparent all evidence relative to search of the car, and to the gun and shells, was irrelevant. Regardless of the good faith of the trial court it was an abuse of judicial discretion to overrule defendant's objections to all this evidence.

We are persuaded prejudice inhered in the presentation of all testimony relative to the sawed-off shotgun and shells which were found in the Chrysler automobile 22 hours after defendant was first apprehended. Upon that basis defendant is entitled to a new trial.

IV. Under existing circumstances we deem it only proper to consider those instructions to the jury which defendant appears to have challenged.

All crimes in this state are statutory and the legislature may define an offense by a particular description of the act or acts constituting it. State v. Di Paglia, 247 Iowa 79, 84, 71 N.W.2d 601, 49 A. L. R.2d 1223.

In connection with the case now before us the pertinent statute, section 706.1, Code, 1962, provides as follows: "Definition—punishment. *If any person willfully, and without lawful authority, forcibly or secretly confine or imprison any other person within the state against his will; or* forcibly carry or send such person out of the state; *or* forcibly seize and confine or inveigle or kidnap any other person with the intent either

to cause such person to be secretly confined or imprisoned in the state against his will, or to cause such person to be sent out of the state against his will, he shall be imprisoned in the penitentiary not more than five years, or fined not exceeding one thousand dollars, or be both so fined and imprisoned, at the discretion of the court." (Emphasis supplied.)

It will serve no useful purpose to extend this opinion by setting forth in full the relevant instructions requested and those given.

By its instructions the trial court told the jury one of the four elements of the offense to be proved by the State was, "That defendant, on or about August 30, 1965, *willfully* confined Geraldine Richardson in Dubuque County, Iowa". (Emphasis supplied.)

"Willfully" ordinarily means intentionally, deliberately or knowingly, as distinguished from accidentally, inadvertently or carelessly. Huston v. Huston, 255 Iowa 543, 548, 122 N.W.2d 892, and Clark v. Sherriff, 247 Iowa 509, 515, 74 N.W.2d 569. And it is to us apparent the word has a common and generally accepted meaning which permits but does not compel a definition of it when used in the giving of instructions to a jury. State v. Mentzer, 230 Iowa 804, 806, 298 N.W. 893.

V. We turn now to a consideration of the matter of "intent" as an element of the offense defined in the first clause of the Act under which defendant was here charged. Briefly stated defendant contends the court should have told the jury kidnapping is the willful and forcible confining of any other person within the state against such person's will and without lawful authority, "with the intent either to cause such person to be secretly confined or imprisoned."

We are persuaded the quoted portion of his proposal is neither proper nor necessary.

In construing the statute here involved it is to us self-evident the General Assembly employed semicolons for the purpose of defining a variety of acts, each of which would constitute the subject offense. Stated otherwise each clause of the Act sets forth a separate but related means by which the offense may be committed. United States ex rel. Palermo v. Smith, 17

774

F.2d 534, 535, and 82 C. J. S., Statutes, section 340, page 682.

 This court has previously held the legislature may forbid the doing of an act and make it a punishable offense without regard to the intent or knowledge of an offender. State v. Dahnke, 244 Iowa 599, 603, 57 N.W.2d 553.

 And, whether a criminal intent such as defendant urges, not specifically made a part of a legislative enactment, is to be deemed an element of a statutory offense must be determined as a matter of construction from the language of the Act or that portion involved, in connection with its manifest purpose and the definition given. State v. Drummer, 254 Iowa 324, 328, 117 N.W.2d 505. See also State v. Hobbs, 252 Iowa 432, 435, 107 N.W.2d 238.

Defendant would apparently have us read into the first clause of section 706.1 the words "with intent either to cause such person to be secretly confined or imprisoned." This we cannot do. In this connection see Rainsbarger v. Shepherd, 254 Iowa 486, 494, 118 N.W.2d 41, 1 A. L. R.3d 1074, and Bergeson v. Pesch, 254 Iowa 223, 227, 117 N.W.2d 431.

Confining ourselves as we do to the first clause of the statute here involved, it is evident an offense is committed when an offender willfully, without lawful authority, forcibly or secretly confines or imprisons another person within the state against his or her will. The act itself is prohibited and specific intent on the part of the offender is not an essential ingredient of the crime. It is enough if the prohibited act is done willfully and unlawfully. See People v. Trawick, 78 Cal. App.2d 604, 178 P.2d 45, 47; State v. Rosegrant, 338 Mo. 1153, 93 S.W. 2d 961, 968; 51 C. J. S., Kidnapping, section 1(3), page 433; and 1 Am. Jur.2d, Abduction and Kidnapping, section 20, page 174.

VI. There is no merit to defendant's claim the trial court erred in failing to define the word "willfully" and in refusing to include "criminal intent" as an element of the offense charged.

But having determined there was prejudicial error in permitting admission of evidence relative to search of the car and to the sawed-off shotgun and shells, this case must be reversed

and remanded for a new trial.—Reversed and remanded for new trial.

All JUSTICES concur except LARSON, J., who dissents from Divisions II and III and the result.

BECKER, J., takes no part.