[Crim. No. 3567.   First Dist., Div. One.   Aug. 27, 1959.]

THE PEOPLE, Respondent, v. ARTHUR PHILLIPS, JR.,
Appellant.

George R. Moscone, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, and Edward P. O'Brien, Deputy Attorney General, for Respondent.

WOOD (Fred B.), J.—Convicted of violating section 207 of the Penal Code (kidnaping) defendant-appellant claims there was no proof that he forcibly took the victim and carried her into another part of the same county.

John Machado was awakened at approximately a half hour past midnight (January 4, 1958), by sounds which he believed were made by his 6-year-old daughter, Sheryl Ann. Arising to investigate he found her missing from her bed. Continuing his search, he went to the back door porch of the basement and saw his daughter on the ground with a man lying prone over her, approximately 15 feet from the porch. The

assailant immediately scaled a 4-foot fence and fled in the direction of the adjoining yard.

The evidence is sufficient to identify defendant as the assailant. It is unnecessary to summarize that evidence in detail because defendant, in his reply brief, admits its sufficiency under the law, insofar as a reviewing court is concerned.

(1) *Was the distance of carriage involved sufficient to constitute a carrying "into another part of the same county" within the meaning of that expression as used in section 207 of the Penal Code?*

The distance here involved was from the child's bedroom into and along a corridor and then down 14 steps to the back door and then 15 feet to the point where she and the defendant were when first observed by Mr. Machado. We think that clearly would be a taking from one part "into another part of the same county." The distances involved in *People* v. *Cook*, 18 Cal.App.2d 625 [64 P.2d 449] [from a sidewalk into a house adjacent], *People* v. *Hunter*, 49 Cal.App.2d 243 [121 P.2d 529] [one victim carried 60 yards, another, merely across railroad tracks], and *People* v. *Loignon*, 160 Cal.App. 2d 412 [325 P.2d 541] [defendant opened the door of his car, pulled the victim into it, and started the motor]. It is true that in the Cook and Hunter cases no question was raised in respect to the distance involved. Nevertheless, those cases have precedential value. They reflect an interpretation similar to ours upon the part of counsel and judges, trial and appellate, who participated therein. In the Loignon case, the point was raised. The defendant argued that there was "no proof of an attempt to take the alleged victim to another part of the county, and that the words 'other part' of the county as used in the statute are 'too vague, indefinite and uncertain'; that it cannot be ascertained whether it means 'a few inches away, across the street, around the corner, or into another political subdivision of the county.' " (P. 421 of 160 Cal.App.2d.) In overruling that contention the court said: "Defendant misconceives the point. It is the fact, 'not the distance, of forcible removal which constitutes kidnaping in this state.' (*People* v. *Chessman*, 38 Cal.2d 166, 192 [238 P.2d 1001]; *People* v. *Cluchey*, 142 Cal.App.2d 563, 565 [298 P.2d 633].) The court further observed in the Chessman case: 'The fact that Regina in being kidnaped or carried away was forced to move only 22 feet does not make her abduction any the less kidnaping within the meaning of the statute.'

"Defendant's act in opening the door of his car and pulling Ricky into it against his will and then, after quieting him, starting the motor, clearly shows an attempt to kidnap the child and amply sustains his conviction on that count." (P. 421 of 160 Cal.App.2d.) Defendant criticizes the decision because the two cases cited (the Chessman and the Cluchey cases) involved section 209, not 207, of the Penal Code. We deem that a distinction without a substantial difference in relation to the specific question now under inquiry.

Defendant advances the argument that because section 207 as originally enacted was interpreted as expressive of the common law (citing *Ex parte Keil,* 85 Cal. 309 [24 P. 742], as holding that it was not kidnaping to take a person from one part of a county across a state line to another part of the same county), the Legislature, by its 1905 amendment to section 207, must have envisaged "movements over considerable distances."

Let us first observe that to read those words into the 1905 amendment would import into the statute a hazardous element of uncertainty. What is a "considerable" distance?

In its original form section 207 forbade a taking in this state and a carrying "into another country, state, or county." Obviously, a line between two counties had to be crossed in order to constitute kidnaping within this state.

In the Kiel case two persons were taken across the channel from the mainland portion to the Catalina Island portion of Los Angeles County. The question discussed was whether such asportation was committed "with a design to take" them "out of this state," thus referring to a distinct and separate portion of section 207. The majority of the court held it was not. No mention of the common law appears in either the majority or the minority opinion. All that the Legislature did in 1905 (to the portion of the statute now under discussion) was to add the words "or into another part of the same county." We deem defendant's analysis highly speculative and are not persuaded by it.

Defendant advances the further argument that in 1933 the Legislature "broadened" the provisions of section 209 of the Penal Code but failed to amend section 207. He would infer therefrom an intent not to "broaden" the provisions of section 207. That, we think, is going far afield to find a legislative intent. Moreover, what the 1933 Legislature intended in relation to section 209 would throw no light on

what the 1905 Legislature intended when it amended section 207.

(2) *Is there sufficient evidence of the implied inference that defendant carried the child from her bedroom to the place in the backyard where they were when they were first seen by Mr. Machado?*

There is no direct evidence that defendant entered the victim's home upon this occasion or took her from her bedroom to the yard at the rear of the house.

There are two facts in evidence from which, it is said, the inference of asportation by this defendant could be drawn: (1) He had at one time been in the Machado home and knew the "layout" of its interior; (2) At 11:30 p.m. the child was in bed, asleep, but in the short space of one hour she was outside in the yard, bruised and lacerated, with the defendant lying over her. There is an element of opposite import. The victim had upon one occasion walked in her sleep. Mr. Machado, knowing that, inferred that she was again walking in her sleep, when he discovered she was no longer in her room.

The prosecution says there is pertinent evidence in addition to the two items we have mentioned. Upon being accosted by Mr. Machado, defendant in great haste, scaled several fences in his flight. That, it is true, evidenced consciousness of guilt. Guilt of what? Of assault, doubtless, but not of kidnaping.

Defendant's principal criticism is based upon the asserted principle that an inference cannot be based upon an inference. That concept, if ever in vogue, was dispelled by our Supreme Court in *People* v. *Chessman,* 38 Cal.2d 166, 187 [238 P.2d 1001]: " 'The true rule is and should be that an inference cannot be based on an inference that is too remote or conjectural.' "

Defendant makes the further contention that there is no room whatever for an inference that defendant committed the asserted asportation.

While it seems to us that the basis for the inference in this case is exceedingly slender and tenuous, still under the rule enunciated in *People* v. *Tedesco,* 1 Cal.2d 211, 219 [34 P.2d 467], we are precluded from disturbing the verdict. Said the court in the Tedesco case: "This court has uniformly held that where there is evidence tending to support a verdict we cannot disturb the verdict upon the ground

that it is not sustained by the evidence; and the application of this rule is strengthened in a case where, as here, the trial court has refused a new trial. ■ It is settled beyond controversy that the weight to be accorded the evidence is a question for the jury (*People* v. *Ellis,* 188 Cal. 682, 688 [206 P. 753].) The finding of the jury in this case was approved by the trial court on motion for a new trial. ■ *The findings of the jury and the trial judge on this subject are conclusive upon this court. It may disturb such a finding only when we can say, as a matter of law, that there was no evidence to support it.* (*People* v. *Erno,* 195 Cal. 272, 283 [232 P. 710].)'' (P. 219 of 1 Cal.2d; emphasis added.)

■ It is established that ''the rule that the circumstances relied upon by the prosecution must be consistent with guilt and inconsistent with an hypothesis of innocence is a rule of instruction for the jury, and is not the rule for the guidance of the court on review.'' (*People* v. *Newland,* 15 Cal.2d 678, 682 [104 P.2d 778].)

As recently as 1953 the case law was reviewed and these rules reaffirmed in *People* v. *Daugherty,* 40 Cal.2d 876, 884-886 [256 P.2d 911].

■ In 1957, these concepts were reiterated in *People* v. *Ames,* 151 Cal.App.2d 714 [312 P.2d 1111] (hearing by the Supreme Court denied): ''A conviction by the trial court is, in the absence of prejudicial error, final, unless no inference can be drawn other than that the accused is innocent.'' (P. 720.)

■ We cannot say, as a matter of law, that there was no evidence to support the inference of asportation by the defendant in this case.

The judgment and the order denying a new trial are affirmed.

Bray, P. J., and Tobriner, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 20, 1959.