[Crim. No. 7463. First Dist., Div. One. Aug. 6, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT C. SIMMS, Defendant and Appellant.

## Counsel

Richard A. Hodge, under appointment by the Court of Appeal, and Anne Flower Cumings for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Gary Garfinkle, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**MOLINARI, P. J.**—Defendant appeals from a judgment of conviction entered pursuant to a jury verdict finding him guilty of robbery. (Pen. Code, § 211.) Defendant makes several contentions which we shall discuss separately following the narration of the pertinent facts.

### The Facts

On February 14, 1968, at about 2:15 p.m., defendant, codefendant Scott, and one Brady Harvey, the victim of the subject crime, were drinking together in an Oakland bar. Harvey left the bar in order to pick up his child from school. Defendant, Scott and one Collins followed Harvey to his car and asked him for a "lift." Harvey agreed. Defendant and Scott got into the back seat while Collins got into the front seat.

After Harvey had been driving for some time, defendant, from the back seat, put a knife to Harvey's throat and stated "This is as far as you go." Defendant then told Collins to take everything Harvey had. Collins thereupon removed all valuables from Harvey's person.[1] Harvey was then struck alongside the head with a club he had in the car. Harvey "blacked out." On regaining consciousness he observed that the three passengers were gone. Harvey called the police and reported the incident.

Some six days subsequent, on February 20, 1968, while driving in the vicinity of the robbery, Harvey observed defendant and codefendant Scott. Harvey stopped a nearby police officer and reported defendant's presence. The officer thereupon stopped defendant and Scott. A pat-search of defendant produced a knife. Defendant and Scott were arrested and taken to police headquarters.

Codefendant Scott, testifying in his own behalf, stated that he was drunk the day of the incident. He stated further that the incident in fact took place as Harvey described, but that he took no part in it. Specifically, Scott stated that defendant, at knife point, took all of Harvey's valuables, struck Harvey with the club and fled the scene. Scott further stated that he had made similar statements to the police prior to trial and after his arrest. Scott's counsel introduced such prior consistent statement into evidence in corroboration of Scott's testimony. In the same vein, a psychiatric report concerning Scott's sanity made by Dr. Norman Rogers was introduced in evidence and read aloud. In that report Dr. Rogers stated that Scott told him that the man seated next to him in Harvey's car had robbed the latter at knife point.

---

[1]These consisted of a billfold, a watch, ring, keys, and money.

Testifying in his own behalf, defendant admitted having been with and seen Harvey on the day of the incident. Defendant stated that he went directly home from the bar and from there directly to school to pick up his daughter. Defendant denied having seen Scott on the day of the robbery. Defendant denied any complicity in the robbery or its having taken place.

### Separate Trials

■ Defendant asserts that reversible error was committed when the trial court permitted him to be tried jointly with Scott. In making this contention he acknowledges the rule that the failure to move for a severance or to make any objection to the consolidated trial before the commencement of the trial is deemed waived and not subject to review on appeal. (See *People* v. *Burns*, 270 Cal.App.2d 238, 251-252 [75 Cal.Rptr. 688]; *People* v. *Irvin*, 264 Cal.App.2d 747, 764-765 [70 Cal.Rptr. 892]; *People* v. *Chambers*, 231 Cal.App.2d 23, 28 [41 Cal.Rptr. 551]; *People* v. *Amata*, 270 Cal.App.2d 575, 586 [75 Cal.Rptr. 860]; see *People* v. *Massie*, 66 Cal.2d 899, 915 [59 Cal.Rptr. 733, 428 P.2d 869]; *People* v. *McGautha*, 70 Cal.2d 770, 785 [76 Cal.Rptr. 434, 452 P.2d 650].)

■ Defendant contends, however, that the trial court should have granted the severance on its own motion when it became aware that the defenses to be presented by defendant and Scott were conflicting and antagonistic and that Scott had made extrajudicial statements implicating defendant. In this connection we point out that there is nothing in the record to show such awareness on the part of the court prior to the commencement of the trial. Indeed, these matters first came to the attention of the court during the opening statements of counsel for the prosecution and the defense and during the testimony adduced at the trial. ■ It should be observed here, therefore, that jeopardy had attached to the defendants since the jury had been duly impaneled and charged with their deliverance. (*Jackson* v. *Superior Court*, 10 Cal.2d 350, 352 [74 P.2d 243, 113 A.L.R. 475]; *Paulson* v. *Superior Court*, 58 Cal.2d 1, 5 [22 Cal.Rptr. 649, 372 P.2d 641]; *People* v. *Ham*, 7 Cal.App.3d 768, 774 [86 Cal.Rptr. 906].) ■ Under these circumstances a severance at that stage would have amounted to a discharge of the defendant whose trial was severed and, unless done with the consent of such defendant or justified on the basis of legal necessity, such severance would have placed that defendant in jeopardy so that he could not be retried. (*Cardenas* v. *Superior Court*, 56 Cal.2d 273, 275 [14 Cal.Rptr. 657, 363 P.2d 889, 100 A.L.R.2d 371]; *Paulson* v. *Superior Court, supra; People* v. *Ham, supra,* at pp. 774-775.) ·

■ In considering defendant's contention we first observe that in

California the Legislature has, by the enactment of Penal Code section 1098, provided that "When two or more defendants are jointly charged with any public offense, . . . they *must* be tried jointly, unless the court orders separate trials. . . ." (Italics added; see *People* v. *Graham,* 71 Cal. 2d 303, 330 [78 Cal.Rptr. 217, 455 P.2d 153]; *People* v. *Clark,* 62 Cal.2d 870, 883 [44 Cal.Rptr. 784, 402 P.2d 856]; *People* v. *Santo,* 43 Cal.2d 319, 332 [273 P.2d 249] [cert. den. 348 U.S. 959 (99 L.Ed. 749, 75 S.Ct. 451)].) We also note that a person jointly accused with another does not have a right to a separate trial, but has merely the right to ask for it, and the court is vested with the discretion to grant or deny such request. (*People* v. *Cohen,* 107 Cal.App.2d 334, 342 [237 P.2d 301]; *People* v. *Massie, supra,* 66 Cal.2d 899, 916; *People* v. *Graham, supra,* at p. 330.)

The trial court is not obliged, therefore, to order a separate trial on its own motion. Such an order requires a request for a severance by the defendant and the exercise of a legal discretion upon the showing made at the time the motion is made and not upon what may have transpired thereafter. (See *People* v. *Santo, supra,* 43 Cal.2d 319, 332; *People* v. *Eudy,* 12 Cal.2d 41, 46 [82 P.2d 359].)

In the light of these principles we observe that the principle contended for by defendant is one that comes into play when the trial court has been called upon to exercise its discretion upon a timely demand for a separate trial. Accordingly, in the exercise of sound discretion a court should separate the trials of codefendants where it is shown that there are conflicting defenses or a prejudicial association with a codefendant; that confusion will likely result from evidence on multiple counts; that there is a possibility that at a separate trial a codefendant will give exonerating testimony; that the prosecution proposes to introduce into evidence a confession of one defendant that implicates a codefendant. (*People* v. *Massie, supra,* 66 Cal.2d 899, 916-917; *People* v. *Graham, supra,* 71 Cal.2d 303, 330.) We should point out here that it is not an abuse of discretion to deny a motion for a separate trial where a defendant moves for a separate trial on the basis of a codefendant's extrajudicial confession, if the incriminating portion of a codefendant's confession can be effectively deleted without prejudice to the defendant, or if the prosecutor assures the court that the confession will not be used. (*People* v. *Aranda,* 63 Cal.2d 518, 530-531 [47 Cal.Rptr. 353, 407 P.2d 265]; *People* v. *Charles,* 66 Cal.2d 330, 333 [57 Cal.Rptr. 745, 425 P.2d 545]; *People* v. *Massie, supra,* at p. 918.)

We observe, finally, that in the cases where the court's discretion was reviewed in the light of the foregoing principles, timely objections were interposed. (See *People* v. *Massie, supra,* 66 Cal.2d 899, 915; *People* v.

*Graham, supra,* 71 Cal.2d 303, 313.) The only exception that we perceive is in *Charles* where the *Aranda* rules were held applicable to cases tried before the date on which *Aranda* was announced and which were pending on appeal. In such cases the *Aranda* rules were held to govern despite the absence of a motion for severance or an objection to a joint trial upon the rationale that convictions on appeal should be tested under the law then applicable rather than the law prevailing at the time of trial. (*People* v. *Charles, supra,* 66 Cal.2d 330, 335.)[2] In *McGautha, supra,* the defendant, in a case tried two years after *Aranda,* did not seek a severance nor did he request the deletions and exclusions authorized by *Aranda.* It was held he could not complain on appeal of the introduction in evidence of the extra-judicial incriminating statements by a codefendant where the defendant knew that the prosecution was likely to use the implicating statement. (70 Cal.2d 770, 785.)[3]

In the instant case it does not affirmatively appear that defendant's trial counsel was unaware of the principles enunciated in *Aranda* and *Massie.* Certainly, he should have been aware of these principles since the instant case commenced over two years after the decision in *Aranda* and almost one year after the decision in *Massie.* The contention that the exception applied in *Charles* is applicable because *Graham* was decided after the trial in the instant case is without merit. *Graham,* insofar as pertinent to this discussion, does not declare new principles but merely reiterates the principles laid down in *Massie.* ■■■ We observe here that, as we shall later point out in this opinion, defendant's counsel as a matter of trial tactics appears to have preferred to have defendant jointly tried with Scott. This preference appears also to have been the choice of Scott's counsel. It is doubtful, therefore, that even if the court had determined to sever the case on its own motion that it would have obtained the consent of both defendants in order to avoid prejudice from the attachment of jeopardy.

■■■ We are not unmindful that, although prejudicial error may not be predicated upon a failure to make a timely objection to the consolidation

---

[2]In *Aranda* the rules enunciated were not applied to the case before it on the basis that they were not constitutionally impelled but were judicially declared rules of practice adopted by the decision to implement Penal Code section 1098. (*People* v. *Aranda, supra,* 63 Cal.2d 518, 530.)

[3]The conclusions reached by us are to be distinguished from those which prevail when the court is required on its own motion to raise the issue of separate counsel in the event of a conflict of interest between the codefendants. In such a case we deal with the basic right to effective representation by counsel under the Sixth Amendment. (See *People* v. *Chacon,* 69 Cal.2d 765, 774 [73 Cal.Rptr. 10, 447 P.2d 106]; *People* v. *Prince,* 268 Cal.App.2d 398, 408-411 [74 Cal.Rptr. 197]; *People* v. *Mitchell,* 1 Cal.App.3d 35, 38 [81 Cal.Rptr. 478].) In the instant case defendant and Scott were represented by separate counsel.

of the trial, a reviewing court may nevertheless reverse a conviction where an unfairness so gross has occurred as to deprive the defendant of a fair trial or due process of law. (See *People* v. *Burns, supra,* 270 Cal.App.2d 238, 252; *People* v. *Chambers,* 231 Cal.App.2d 23, 28 [41 Cal.Rptr. 551]; *People* v. *Sarazzawski,* 27 Cal.2d 7, 11 [161 P.2d 934].) The determination whether such an unfairness has occurred depends upon an examination of the entire case. (See *People* v. *Burns, supra; People* v. *Chambers, supra.*) We shall make this determination after we consider the remaining assertions of error.

### The Right of Confrontation

█ Defendant correctly asserts that the introduction of Scott's extrajudicial statements implicating defendant were violative of his constitutional right to confront witnesses against him. █ In *Bruton* v. *United States,* 391 U.S. 123, 127-128 [20 L.Ed.2d 476, 480-481, 88 S.Ct. 1620], it was held that it is a denial of the right of cross-examination, guaranteed to a defendant in a criminal case by the confrontation clause of the Sixth Amendment, to admit at a joint trial an extrajudicial confession of a codefendant which implicates the defendant, despite instructions to the jury to disregard the confession as evidence against the nonconfessing defendant. We observe here that in the instant case no such limiting instruction was given or requested.

The *Bruton* rules are given retroactive application (see *Roberts* v. *Russell,* 392 U.S. 293, 294 [20 L.Ed.2d 1100, 1102, 88 S.Ct. 1921]), and they have been held to apply even where the codefendant takes the stand and subjects himself to cross-examination, or gives testimony in accordance with his prior confession. (*In re Hill,* 71 Cal.2d 997, 1012 [80 Cal.Rptr. 537, 458 P.2d 449]; *People* v. *Washington,* 71 Cal.2d 1061, 1075 [80 Cal.Rptr. 567, 458 P.2d 479].) They likewise apply where the extrajudicial and incriminating statements of the codefendant are introduced by the codefendant himself (*People* v. *Graham, supra,* 71 Cal.2d 303, 330), and they apply both to inconsistent statements (*People* v. *Johnson,* 68 Cal.2d 646, 658-659 [68 Cal.Rptr. 599, 441 P.2d 111]) and consistent statements. (*People* v. *Washington, supra,* at pp. 1076-1077.)[4] █ Here, Scott's

---

[4]*Johnson* held that Evidence Code section 1235, providing for the admission of *prior inconsistent statements* as an exception to the hearsay rule, is unconstitutional insofar as it permits the substantive use of such statements in criminal cases. (68 Cal.2d at p. 660.) *Washington* makes the same holding with respect to Evidence Code section 1236, providing for the admission of *prior* consistent statements as an exception to the hearsay rule. (71 Cal.2d at pp. 1075-1076.)

counsel introduced Scott's prior consistent statements to the police and the examining physician as corroborative of Scott's in-court statements by which he recounted defendant's involvement in the subject robbery. Since such extrajudicial statements appear to have been introduced for their substantive worth, it was constitutional error to admit them.

We observe here that defendant's trial counsel failed to object to the introduction of these extrajudicial statements. Ordinarily, such failure amounts to a waiver of the objection. (*People* v. *Keel*, 272 Cal.App.2d 275, 277 [77 Cal.Rptr. 298]; *People* v. *Foster*, 271 Cal.App.2d 763, 765-766 [76 Cal.Rptr. 775]; *Douglas* v. *Alabama*, 380 U.S. 415, 422 [13 L.Ed.2d 934, 939, 85 S.Ct. 1074].) We do not believe, however, that under the circumstances of this case there was a waiver of the *Bruton,* *Graham* and *Washington* principles. The instant case commenced two days after the *Bruton* decision. We doubt that trial counsel was then aware of the holding and its implications with respect to the present case. In any event, there was a question in view of the language in *Bruton* whether the rule it articulated applied to the situation when the extrajudicially confessing defendant takes the stand and is subject to cross-examination. (See *In re Hill, supra,* 71 Cal.2d 997, 1012.) *Hill,* holding that the *Bruton* rule applies to this situation, was decided after the instant trial.[5] Moreover, in *Washington,* it was held that where, as here, a trial date preceded the May 28, 1968 decision of *Johnson,* an objection would have been futile and the failure to make an objection was excused. (*People* v. *Washington, supra,* 71 Cal.2d 1061, 1077, fn. 7.) Accordingly, we can reasonably conclude that defendant's trial counsel, if he was aware of the *Bruton* decision, was justified in believing that the *Bruton* rule was not applicable where the codefendant took the stand and subjected himself to cross-examination. Certainly he was justified in believing that Evidence Code section 1236, permitting the introduction of consistent prior statements as an exception to the hearsay rule, was a legislative mandate and that an objection to the admissibility of such statements would have been futile. (See *People* v. *Odom,* 71 Cal.2d 709, 717-718 [78 Cal.Rptr. 873, 456 P.2d 145].) Therefore, under the circumstances, we conclude that defendant is not precluded from raising the error here involved for the first time on appeal.

### Limited Admissibility

Defendant next alleges error in the court's failure to instruct, *sua sponte,* that the jury could not consider Scott's extrajudicial and impli-

---

[5] *Hill* was decided on September 11, 1969. The trial of the instant case concluded on May 24, 1968. Judgment herein was imposed on June 14, 1968.

cating statements as evidence against defendant, and that by reason of such failure defendant was denied due process of law. This contention is without merit. Although in criminal cases the court has the duty of giving on its own motion, instructions on the pertinent general principles of law commonly or closely and openly connected with the facts of the case before the court (*People v. Jackson,* 59 Cal.2d 375, 380 [29 Cal.Rptr. 505, 379 P.2d 937]; *People v. Wade,* 53 Cal.2d 322, 334 [1 Cal.Rptr. 683, 348 P.2d 116]; *People v. Warren,* 16 Cal.2d 103, 116-117 [104 P.2d 1024]), there is no duty, in the absence of a request, to give an instruction limiting the purpose for which evidence may be considered. (See Evid. Code, § 355; see also *People v. Holbrook,* 45 Cal.2d 228, 233 [288 P.2d 1]; *People v. White,* 50 Cal.2d 428, 430 [325 P.2d 985]; *People v. Hawkins,* 177 Cal.App.2d 714, 719 [2 Cal.Rptr. 524].) Moreover, as pointed out above, under the rule articulated in *Bruton* such an admonishing and delimiting instruction does not cure the error occasioned when an extrajudicial confession of a codefendant implicating the defendant is admitted in a joint trial.

### *The Knife*

 The arresting officer testified that when he arrested defendant six days after the alleged robbery he found a knife on defendant's person incident to a pat-search. Defense counsel objected on the ground of irrelevancy and moved that the testimony be stricken. The trial court made an incongruous ruling in that it sustained the objection on the ground of irrelevancy because the finding of the knife was too remote from the day of the robbery, but refused to strike the testimony with the observation that there was no harm in the jury's knowing that a knife was found in defendant's pocket but "They can't tie that in the occurrence." Defendant asserts that such refusal was error because the jury could easily have concluded that the knife found was that used to perpetrate the robbery.

 Adverting to the question of relevancy, we observe that there is no precise formula for relevancy. It is only that evidence which logically, naturally and by reasonable inference tends to establish some fact. (Evid. Code, §§ 350 and 210; *People v. Warner,* 270 Cal.App.2d 900, 907 [76 Cal.Rptr. 160]; *People v. Kelley,* 66 Cal.2d 232, 239 [57 Cal.Rptr. 363, 424 P.2d 947]; *People v. Durham,* 70 Cal.2d 171, 186 [74 Cal.Rptr. 262, 449 P.2d 198].) An inference may not be drawn, however, from another where the two are remote in time and/or are too speculative. (*People v. Warner, supra,* at p. 908; *People v. Davis,* 235 Cal.App.2d 214, 225 [45 Cal.Rptr. 297]; *People v. Vignoli,* 213 Cal.App.2d 855, 857 [29 Cal.Rptr. 260].)

Here, the trial court was correct in sustaining the objection because at that posture of the case the inference that defendant had used such knife to perpetrate the robbery was too speculative and remote to be permissible. Such evidence did not tend in reason to prove or disprove the disputed fact in evidence on the basis that the evidence offered rendered the desired evidence more probable than it would be without the evidence. (See *People* v. *Warner*, 270 Cal.App.2d 900, 907 [76 Cal.Rptr. 160]; see also McCormick, Evidence, p. 318.) Accordingly, since the objection was well taken the testimony should likewise have been stricken.

The error in refusing to strike the subject testimony was, however, subsequently cured because the subject knife thereafter became relevant evidence in the case. Scott, who followed the arresting officer to the stand, testified under cross-examination by the prosecutor that the knife shown to him by the prosecutor was the one used by defendant in the robbery. Such testimonal identification by a percipient witness suffices as a foundation for its admissibility. (*People* v. *Rader*, 24 Cal.App. 477, 485 [141 P. 958]; *People* v. *Ham, supra,* 7 Cal.App.3d 768, 780; see *People* v. *Richardson*, 74 Cal.App.2d 528, 540-541 [169 P.2d 44]; see *People* v. *Riser*, 47 Cal.2d 566, 576-577 [305 P.2d 1].) Accordingly, since the knife was subsequently admitted in evidence the testimony that this knife was found on defendant's person six days after the robbery was cleansed of its taint of remoteness. (See *People* v. *Richardson, supra,* at p. 541.)

### Instructions

Defendant requested an instruction that where a party presents weaker evidence than he possesses the evidence presented is to be viewed with suspicion. The court refused to give such instruction. The basis upon which defendant predicated this instruction is that there was no corroboration of Harvey's injuries to his neck and that, therefore, this issue was submitted to the jury on weaker evidence.

Although defendant's proffered instruction was a correct statement of the law (see Evid. Code, § 412), the rule that a party is entitled to instructions on defenses apparent from the evidence and on his legal theories, is applicable only where the evidence concerns some material point. (See *Hansen* v. *Warco Steel Corp.*, 237 Cal.App.2d 870, 876-877 [47 Cal.Rptr. 428, 48 Cal.Rptr. 164].) Here Harvey's injuries are not material or requisite to the robbery charge since there was ample evidence that Harvey was robbed under threat of force. (See Pen. Code, § 211.) That he was injured is not requisite to the charge. Moreover, in order for the subject rule to apply it must be shown that the People were in fact possessed of better and stronger evidence. (*Nix* v. *Heald,* 90 Cal.App.2d 723, 732-733 [203 P.2d

847]; see *Hansen* v. *Warco Steel Corp., supra,* at p. 877; *Hooper* v. *Bronson,* 123 Cal.App.2d 243, 247 [266 P.2d 590].) Here there is no showing that the People were possessed of stronger evidence concerning Harvey's alleged cut. Accordingly, the trial court did not err in refusing to give the instruction.

▆ Defendant also contends that it was error for the court to instruct that neither the People nor defendant need call all witnesses or introduce all exhibits or documents referred to in the testimony or suggested by the evidence. He asserts error because it was in direct repudiation of his contention that weaker evidence had been introduced and that it was unaccompanied by any immediate instruction as to the People's burden of proof. Accordingly, he argues that the jury could have inferred that the burden of proof was to be shared equally by the People and defendant. This contention is unsupported by any authority and we therefore are entitled to reject it on this ground. (See *Solomont* v. *Polk Dev. Co.,* 245 Cal.App.2d 488, 496 [54 Cal.Rptr. 22]; *People* ex rel. *Dept. of Public Works* v. *Garden Grove Farms,* 231 Cal.App.2d 666, 674 [42 Cal.Rptr. 118].) We observe, moreover, that the instruction is a correct statement of law and that it was proper to so instruct. (See *People* v. *Wein,* 50 Cal.2d 383, 403 [326 P.2d 457]; *People* v. *Adams,* 249 Cal.App.2d 501, 508 [57 Cal.Rptr. 389]; *People* v. *Galvan,* 208 Cal.App.2d 443, 449-450 [25 Cal.Rptr. 128].) With respect to the burden of proof, the jury was thoroughly instructed on this burden. Although such instructions on the burden of proof did not immediately follow the questioned instruction, defendant does not point out that there was any confusion. We are entitled to assume that the jurors followed the court's instructions. (*People* v. *Sparks,* 257 Cal.App.2d 306, 309 [64 Cal.Rptr. 682]; *People* v. *Isby,* 30 Cal.2d 879, 896-897 [186 P.2d 405]; *People* v. *Aranda, supra,* 63 Cal.2d 518, 524-525.)

### Effectiveness of Counsel

▆ Defendant urges that his trial counsel was ineffective in several respects and that he is, therefore, entitled to a reversal. To sustain this claim defendant must show that counsel's ignorance of relevant law or his general dirth of diligence or competence reduced the trial to a "farce or a sham." (*People* v. *Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487]; *In re Williams,* 1 Cal.3d 168, 175 [81 Cal.Rptr. 784, 460 P.2d 984]; *People* v. *Nicolaus,* 65 Cal.2d 866, 883 [56 Cal.Rptr. 635, 423 P.2d 787]; *People* v. *Pineda,* 253 Cal.App.2d 443, 467 [62 Cal.Rptr. 144].)

▆ In ascertaining whether there is such a showing we first observe that there is imposed upon counsel the minimal duty to investigate all defenses of law or fact and his failure to do so may result in the denial of effective

assistance of counsel. (*People* v. *Ibarra, supra,* at p. 464; *In re Williams, supra,* at pp. 170-171; *People* v. *McDowell,* 69 Cal.2d 737, 746 [73 Cal. Rptr. 1, 447 P.2d 97].) ██ However, where counsel is aware of the relevant and applicable law and of the available defenses of law and fact following a proper investigation, there is no ground for the assertion of ineffective counsel merely because counsel makes a mistake in judgment. (*People* v. *Pineda, supra,* at p. 468; *In re Rose,* 62 Cal.2d 384, 389 [42 Cal.Rptr. 236, 398 P.2d 428].) In this connection, we observe that appellate courts will not sustain a claim of ineffective counsel merely on the basis that counsel employed trial tactics or exercised judgment which may not have achieved counsel's desires or expectations. (See *People* v. *Brooks,* 64 Cal.2d 130, 140 [48 Cal.Rptr. 879, 410 P.2d 383]; *People* v. *Silva,* 266 Cal.App.2d 165, 175 [72 Cal.Rptr. 38]; *People* v. *Lucas,* 1 Cal.App.3d 637, 644 [81 Cal.Rptr. 840].)

██ In the light of these principles we advert to the contention that the failure of trial counsel to move for a separate trial deprived defendant of effective representation. In this regard the only showing made is that trial counsel did not move for a separate trial or object to the consolidation. There is no showing that counsel was unaware of the relevant and dispositive law, or that he was inadequately prepared or that defendant was deprived of a crucial defense because of the conduct of defense counsel. As we shall point out below, there is a strong indication in the record that defense counsel was aware that Scott would present a defense different than that presented by defendant; that he was aware of Scott's extrajudicial statements; and that his election not to move for a separate trial was a trial tactic. It is not for us to second-guess defense counsel's trial tactics in preferring to have Scott as a codefendant. ██ Before ineffectiveness of counsel may be successfully urged, an extreme case must be shown. (*People* v. *Ibarra, supra,* 60 Cal.2d 460, 464; *People* v. *Wein, supra,* 50 Cal.2d 383, 410; *People* v. *Doebke,* 1 Cal.App.3d 931, 937-938 [81 Cal.Rptr. 391].) The assertion may not be predicated on mere surmise or speculation, but must be proved as a demonstrable reality or fact. (*People* v. *Reeves,* 64 Cal.2d 766, 774 [51 Cal.Rptr. 691, 415 P.2d 35]; *People* v. *Robillard,* 55 Cal.2d 88, 97 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086]; *People* v. *Doebke, supra,* at p. 938.) No such demonstration has been made here.

██ Defendant also suggests that his trial counsel's occasional confusion of him with codefendant Scott denied defendant the effective assistance of counsel by suggesting to the jury that trial counsel did not take defendant's case seriously. This assertion is mere speculation. We are unable to perceive, in the light of the principles applicable to the claim of ineffective counsel, how defense counsel's confusion of defendant and Scott on the

several occasions it occurred deprived defendant of any dispositive defenses or reduced his trial to a "farce or a sham."

■ It is also contended that defendant was denied the effective assistance of counsel when his counsel did not object to the offer of the prosecuting attorney to introduce the subject knife into evidence.[6] There is no merit to this contention. As already pointed out, the knife was admissible in evidence. Therefore, an objection would have been futile since it would properly have been overruled.

■ Finally, defendant contends that his trial counsel's failure to ask for an instruction to the effect that Scott's extrajudicial statements could not be considered as evidence against defendant denied him the effective assistance of counsel. In considering this contention we first observe that Scott's extrajudicial statements constituted hearsay and were inadmissible against defendant had defendant's counsel requested an instruction to this effect. (Evid. Code, § 355; see *People* v. *Gilliland,* 39 Cal.App.2d 250, 255 [103 P.2d 179].) Indeed, since the effect of these statements was to implicate defendant and to exonerate Scott, the trial court was empowered to exclude such statements on the basis that they were so prejudicial that a limiting instruction would not adequately protect defendant and there was other evidence by which the matter in question could adequately be proved. (See *Adkins* v. *Brett,* 184 Cal. 252, 258 [193 P. 251].) Defense counsel was not ignorant of these principles as appears from his argument to the jury wherein he stated that he deliberately permitted their introduction because these statements indicate that Scott was not telling the truth.[7] Defense counsel succeeded in getting before the jury a statement that Scott had given to a Dr. Sowers in which Scott had admitted that the story he had given the police was not true, that he was not with defendant on the day of the robbery, and that he didn't know what he was saying when he gave the statement because "he was having d.t.'s." On cross-examination Scott was confronted with the statement he gave Dr. Sowers and defendant's counsel sought to impeach Scott's testimony with this statement. It is apparent that since Scott was the only witness who testified that he saw defendant strike Harvey from behind, the negation of Scott's testimony could conceivably raise a doubt in the minds of the jurors as to whether

[6]The failure to make a timely, specific objection to the admission of evidence is a waiver of the objection and forecloses the objection on appeal. (See Evid. Code, § 353, subd. (a); *People* v. *Williams,* 265 Cal.App.2d 888, 899 [71 Cal.Rptr. 773]; *People* v. *Fontaine,* 237 Cal.App.2d 320, 329 [46 Cal.Rptr. 855] [hear. den. 391 U.S. 929 (20 L.Ed.2d 154, 88 S.Ct. 1229)].)

[7]Defense counsel stated as follows: "I want you to appreciate that statement could not come in without both his agreement and my agreement. I do not mind it in because it tends to show what I believe happened."

defendant was the perpetrator of the robbery. We observe, further, that defendant's counsel argued that Scott's testimony in court was consistent with his extrajudicial statements because he would otherwise be "in big trouble" in submitting himself to impeachment. Defendant's counsel also seized on the evidence regarding Scott's alcoholism to cast doubt on the truthfulness of his statements. Finally, we note that defendant's counsel argued a discrepancy between Scott's testimony in court that defendant had told Harvey to put his hands up and the omission of that fact in the statement to the police.

In view of the foregoing it was apparent that defendant's counsel was attempting to discredit Scott who was the only eyewitness to what actually transpired other than the victim. The elimination of Scott's testimony by discreditation would leave the case in the posture where it was Harvey's word against defendant's, a circumstance which would undoubtedly affect the prosecution's burden of proving defendant guilty beyond a reasonable doubt. We may assume, under the circumstances, that counsel knew that Scott would testify in court that defendant was the robber. His strategy, therefore, appears to have been an attempt to show that this testimony was false because it was consistent with extrajudicial statements which Scott in a second statement had acknowledged were false. Accordingly, we are dealing with a matter of trial strategy rather than the matter of the deprivation of a crucial defense. Certainly we cannot say that these tactics rendered the trial a farce or a sham. Rather we are relegated to second-guessing the validity of counsel's trial strategy. This we may not do. (See *People v. Brooks, supra,* 64 Cal.2d 130, 140.)

### Conclusion

In view of the foregoing we perceive that the only error which occurred in the court below was the violation of the *Bruton* rule. We are satisfied, however, that this constitutional error was harmless to defendant "beyond a reasonable doubt" and that there was no "reasonable possibility" that such error contributed to defendant's conviction. (*Chapman v. California,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065]; *People v. Spencer,* 66 Cal.2d 158, 169 [57 Cal.Rptr. 163, 424 P.2d 715]; *People v. Gallardo,* 269 Cal.App.2d 86, 90 [74 Cal.Rptr. 572].) Scott's prior extrajudicial statements were substantially identical to his testimony at the trial. It is inconceivable that the jury could believe one and not the other. Moreover, defendant availed himself of the opportunity to cross-examine Scott with respect to his testimony consistent with his extrajudicial statements. Accordingly, the extrajudicial statements were merely a repetition of Scott's testimony in court which the jury, under its prerogative to give such testimony full substantive use, was entitled to be-

lieve. That they did believe it is indicated by defendant's conviction. (See *People* v. *Washington, supra,* 71 Cal.2d 1061, 1078; *In re Hill, supra,* 71 Cal.2d 997, 1007-1008.)

 In the light of this conclusion we are also impelled, upon an examination of the entire case, to conclude that, although defendant was tried, jointly with Scott, no unfairness so gross as to deprive defendant of a fair trial or due process occurred because of the consolidated trial.

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 1, 1970.